(No. 9615—Rule made absolute.)
THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* BEAUREGARD F. MOSELEY, Respondent.

*Opinion filed April 19, 1917—Rehearing denied June 8, 1917.*

DISBARMENT—*when testimony is directly contradictory the decision must rest on the credibility and not on the number of witnesses.* Where there is a direct contradiction between the witnesses as to whether money collected by an attorney was turned over to a client the decision as to the truth of the matter must rest upon the credibility of the witnesses and such circumstances of corroboration or discredit as are proven by other testimony and not merely upon the number of witnesses testifying to any fact.

CRAIG, C. J., and CARTER and DUNCAN, JJ., dissenting.

INFORMATION to disbar.

JOHN L. FOGLE, (JOSEPH W. MOSES, of counsel,) for relator.

S. L. & FRED LOWENTHAL, (IGNACE E. WEISS, and EDWARD H. MORRIS, of counsel,) for respondent.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

At the June term, 1914, upon leave given, an information in the name of the People of the State of Illinois, on the relation of the Chicago Bar Association, was filed in this court against the respondent, Beauregard F. Moseley, an attorney admitted to the bar of this court and practicing his profession in the city of Chicago, charging that on or about July 1, 1910, Frank Crowell employed the respondent as his attorney to collect from Dr. W. A. Waite a claim for wages amounting to $560.35, part of which was represented by a promissory note for $200, dated December 31, 1909, and due six months after date, with interest at six per cent; that Crowell was unable to read or write, and the

respondent drafted an assignment to the respondent of the claim and note, which Crowell signed with his mark; that on July 14, 1910, Waite paid to the respondent, by check, $354.10 as a payment of the account; that the respondent brought suit on the note in the municipal court of Chicago and received on June 10, 1913, the further sum of $206.25 in payment of the note, making a total of $560.35 collected as attorney for Crowell; that Crowell from time to time demanded from the respondent an accounting of the proceeds of the collections; that the respondent failed to account in full for the same, and during the period from the date of the first collection to March 31, 1914, made three payments of $20 each to Crowell, amounting in all to $60, and on March 31, 1914, the respondent falsely informed Crowell that the suit was still pending in the Appellate Court, although it had been determined and the respondent had been paid $206.25 on June 10, 1913.

The respondent answered, admitting that Crowell was unable to read or write, and alleging that in June, 1910, he came to the respondent's office with a note of Dr. W. A. Waite for $200 which would fall due about June 30, 1910, and said he would like to dispose of the note or respondent might collect the same; that the respondent said to Crowell that if the note was regular and due he would charge him twenty-five per cent of the amount for the collection of it or he would pay Crowell seventy-five per cent of the face of the note and take an assignment, but payment would depend on the validity of the note; that Crowell was satisfied and indorsed the note to the respondent by making his mark on the same; that in the early part of July, Crowell again came to the office of the respondent and told him he had another claim for wages against Dr. Waite in addition to the note already assigned, which account, the respondent found, amounted to $354.10; that the respondent undertook the collection of that account on the same basis as to his charges if it was a legitimate claim; that Crowell con-

sented, and the respondent drew up an assignment to himself of the claim and a three days' notice for its payment, both of which were signed by Crowell with his mark; that the respondent directed Crowell to serve both of said papers on Dr. Waite and after so doing to return to the respondent's office, which Crowell did; that Waite sent the respondent $354.10 in payment of the account; that on or about July 18 Crowell came to the respondent's office and the respondent paid him said sum of $354.10 and took his receipt for the same, signed by his mark; that the respondent informed Crowell that there would be about $60 more due him when the note was collected and respondent would take his fees out of the proceeds of the note; that Crowell called on three different occasions and received the balance of $60 due him; that the respondent sued Waite on the note and the suit was defended and the trial court decided against Waite; that Waite appealed to the Appellate Court, where the judgment of the trial court was affirmed, and that the respondent did not inform Crowell of the progress of the proceedings in the courts on the note for the reason that Crowell had received his full seventy-five per cent of the amount of his claims.

The issues were referred to Horatio L. Waite as commissioner to take the evidence and report his conclusions. Afterward, at the April term, 1916, an additional count to the information was filed by leave of court, charging respondent with making a false affidavit on January 10, 1916, for the purpose of having a non-suit set aside in a suit brought by Crowell against the respondent for the amount claimed to be due him, which affidavit stated that the representative of the bar association had refused to proceed with this case and it had been stricken from the docket of this court. The respondent answered the additional count, alleging that the affidavit was never presented to the judge presiding in the court where the non-suit had been entered, and when the affidavit was made he did not know it to be

false, but believed, from correspondence and talks which he had with his attorney, that the facts therein stated were true.

The commissioner took the evidence and reported as his conclusions that Crowell was of low mentality and could neither read nor write and had been an hostler in the employ of Waite in a livery stable; that he employed the respondent to collect his claims against Waite for twenty-five per cent of the amount collected and at the time of the employment assigned to the respondent a note for $200 executed by Waite; that on July 14, 1910, the respondent was paid by Waite $354.10, which Waite claimed was in full payment of the note as well as the account; that the respondent sued Waite on the note assigned to him and obtained a judgment, which was affirmed by the Appellate Court, and on or about June 10, 1913, the amount of the judgment, with interest and costs, was paid to the respondent, amounting to $206.25 for the note, making a total amount received by the respondent of $560.35; that it was claimed by Crowell that the only sums of money ever paid to him by the respondent were three payments of $20 each, made in the summer and fall of 1910, while the respondent claimed that $354.10 was paid by him to Crowell on July 18, 1910, and thereafter the three payments of $20 each, making a total of $414.10,—three-fourths of the full amount collected,—and that after viewing the witnesses and after a careful consideration of the evidence he found that the respondent did not pay Crowell $354.10 on July 18, 1910, nor at any other time, and that the only money paid Crowell by the respondent amounted to the sum of $60. The commissioner stated that in addition to the other tests applied to ascertain the truthfulness of the testimony of witnesses he based his conclusion on the following: That the three payments to Crowell, of $20 each, which were undisputed, were made by check of the respondent, and the payment of Waite to the respondent was by check, which the respondent had deposited in his account in the bank; that while the

respondent produced and offered in evidence a receipt dated July 18, 1910, for $354.10, which contained a cross-mark alleged to have been placed thereon by Crowell on the date of the receipt and which receipt was witnessed by the stenographer of the respondent, evidence of a satisfactory character was presented that Crowell was not in Chicago on July 18, 1910, but was on that date in the employ of a farmer at Niles Center, and on the further fact that the respondent testified he did not act as attorney for Crowell but purchased the claim from him and acted solely for himself thereafter as owner of the same, which testimony was clearly not true. The commissioner recommended that the rule be made absolute. Objections to the report were made by the respondent and overruled, and by agreement the objections stood as exceptions in this court.

A material disputed question of fact is whether the respondent on July 18, 1910, paid to Frank Crowell the $354.10 which the respondent had received as attorney for Crowell from Dr. Waite. As related to that question, the respondent testified that Crowell came to his office with the note for $200 and he told Crowell that he would give him seventy-five cents on the dollar for the note if it was valid, and Crowell said that would be all right; that the respondent wrote an indorsement on the note, to which Crowell made his mark; that within the next two days Crowell called again with an account against Waite for wages, when the respondent drew up an assignment of that claim and a three days' notice to be served on Waite; that Waite sent the respondent his check for $354.10, and on July 18, 1910, Crowell came to the respondent's office and was informed that the money on the account had been received; that while Crowell was there the manager of a baseball club owned by the respondent came in with $650 and the respondent told him to give the money to the stenographer, whom he directed to pay $354.10 out of the money and take Crowell's receipt for it; that she counted out $354.10 and

handed it to the respondent, who looked it over and gave the money back and she handed it to Crowell, and that she wrote a receipt, to which Crowell made his mark, and he then took the money and left the office. A receipt was presented bearing the signature of Crowell by his mark, written on a paper apparently detached from a letter-head and bearing on the other side the advertisement of a baseball team. The receipt is on the back of a paper and the advertisement is on the front. Below the advertisement is the usual date line, in which there is an erasure before "18th," and the word "July" has been written over the erasure. The stenographer, who was also book-keeper, testified that Crowell came into the office on July 18, 1910, and the respondent told him that he had his money; that the baseball manager was there and the respondent asked him whether he had any money, to which he answered that he had, and on being asked how much, answered that he had something like $600, which he gave to the stenographer; that the respondent told her to count out $354.10, which she did and gave the money to the respondent, who gave it to Crowell and took his receipt for it; that she wrote the receipt and witnessed the signature by writing, "Witness, F. E. E." Andrew Foster, the baseball manager, testified that he came to the respondent's office on July 18, 1910; that Crowell was in the office, and the witness knew him because he had seen him there several times; that the respondent asked the witness if he brought any money, and the witness answered that he had six hundred and some odd dollars; that the respondent told the stenographer to pay Crowell the money, and that the witness left the office after he turned over the money and did not know what was done with it. Crowell denied that he received the payment of $354.10 or signed any receipt for that sum or that he ever received any payments from the respondent except the three payments of $20 each; that he called on the respondent from time to time and was told that the case was in the

Appellate Court and it would take a long time; that the respondent never told him that he made the collection of $354.10, and that he never had any more than $30 in his pocket at one time.

There was a direct contradiction between the witnesses concerning the alleged payments about which neither could have been mistaken, and a decision as to the truth must rest upon the credibility of the witnesses testifying concerning the payments and whatever credit or discredit as to either may appear from facts proved by other witnesses. In judging of the truthfulness of the witnesses the commissioner had the benefit of personal observation of their appearance, demeanor and manner of testifying, so well known and so often said to be of the greatest importance, and he concluded from such observation and all the evidence that the testimony of Crowell was true. A conclusion on such a question does not necessarily depend on the number of witnesses on either side, since the testimony of a single witness may carry conviction of its truth as against a number of witnesses testifying to the contrary. Reading the record and judging from that alone, there is much which supports the commissioner's conclusion and leads to the belief that he was right. The respondent testified that he never acted as attorney for Crowell at any time; that he bought the claim and paid him for it; that both the note and account were assigned to him by Crowell, who was to receive, and did receive, seventy-five per cent as a consideration therefor,— and that testimony was unquestionably not true. The respondent did take assignments of the note and account, but both note and account were given to the respondent to collect, as shown by the testimony of the stenographer and by the fact that nothing was paid or to be paid until collections were made; and the respondent also testified that when Crowell came to the office at the time of the alleged payment of the $354.10 he told Crowell he could not give him all at that time because he had not collected the money on

the note and that they might have a lawsuit and might not. The stenographer testified that the respondent kept books containing his accounts with his clients and of the baseball games; that she thought she credited the money to Crowell's account; that she did not remember whether the payment of the $354.10 was in the books or not but the $60 was in the books, and that in looking in the books she did not find the $354.10 in them and did not remember whether there was any entry of it or not. The book-keeper was cross-examined at length concerning what appeared in the books respecting this account, and the books which would have shown whether there was any entry were not produced. The payment by Waite had been deposited in the bank in the account of the respondent, and the testimony of the book-keeper was that the custom of the respondent was to pay by check and that she had drawn thousands of checks which he signed, while this payment was alleged to have been made in currency, contrary to the usual custom. The attorney who brought suit for Crowell in the municipal court against the respondent for the money paid by Waite testified that he filed a statement of the claim and the statement of the defense was a general denial, and that he did not up to the time of the trial of that case, when the nonsuit was taken, have any information, from any source, of the alleged payment to Crowell on July 18, 1910, of $354.10, but the first time he heard of it was at the time of the trial, when testimony was offered and the receipt produced. The baseball manager testified that he went to the respondent's office to turn in the receipts of the Saturday and Sunday baseball games and saw Crowell there and knew him because he had seen him there several times, when, as a matter of fact, Crowell had not been there several times and there was no evidence tending to prove that the baseball manager was present when Crowell had been there. That witness, however, testified that he left the office and did not see the money paid to Crowell but it was lying on the

desk when he left. The commissioner reported that evidence of a satisfactory character was presented showing that Crowell was not in Chicago on July 18, 1910, but was on that date with Fred Jetman, a farmer at Niles Center, and worked on that date on the farm, and was there from a number of days previous to July 18 to Wednesday or Thursday, July 20 or 21. Both Crowell and Jetman testified to that fact. Jetman, who was a relative by marriage to Crowell, was a truck farmer at Niles Center, and testified that he kept a memorandum book, which he called a day-book, for the people who worked for him, in which he marked down the days Crowell worked for him from the 15th to the 21st of July; that they came to town on the 21st with potatoes and peas, leaving the farm about midnight; that when Crowell told him he had a suit against the respondent he looked over the book, which refreshed his recollection, and that he threw the book away a year before the hearing in this case, when he cleaned up, because he had no use for it any more, as he then paid his help every night instead of weekly or monthly, as he had done when he kept the book. There was no possibility of any mistake on the part of the respondent and his witnesses as to the date of the alleged payment being July 18, because it was on Monday when the baseball manager turned in the receipts of the Saturday and Sunday baseball games, which would necessarily be turned in on Monday. Furthermore, it would be out of the usual way of doing business for an attorney or collector who is to have twenty-five per cent of the proceeds of a collection to pay the total amount of a claim without any deduction of his fees, and also to make payments on a note which had not yet been collected and which the maker claimed had been included in the check of $354.10. There is also inherent improbability in the charge that an uneducated day laborer received $354.10 from the respondent in the presence of witnesses and gave a receipt for the

278 — 25

money and then devised a scheme to recover it from the respondent.

No evidence was taken concerning the affidavit mentioned in the additional count, which was untrue as a matter of fact, and the answer of the respondent in which he alleged that he believed it to be true may be accepted as a fact. Nevertheless, it showed at least a failure to seek the proper source of information before making the affidavit, which is much to his discredit but would not be regarded as alone sufficient to require his name to be stricken from the rolls.

We agree with the findings of the commissioner, and the exceptions are overruled and the rule made absolute. The respondent's name will be stricken from the roll of attorneys of this court.    *Rule made absolute.*

Mr. CHIEF JUSTICE CRAIG, dissenting:

The charge against the respondent rests almost entirely on the evidence of Crowell. The only other material witness was Jetman, who undertook to testify that Crowell was working for him at Niles Center from July 15 to July 21, 1910, and was not in Chicago on July 18, when respondent claims he paid Crowell the amount in dispute. Crowell and Jetman differed in their testimony as to the time when Crowell worked for Jetman. Crowell was related to Jetman and the latter seems to have taken considerable interest in Crowell's affairs. Jetman was testifying in 1915 to events that happened in 1910. He stated that he could not remember when Crowell worked for him except from formerly consulting a memorandum book which he claims to have kept at that time but which he had thrown away a year before he testified, and he admitted, on cross-examination, that Crowell might have been in Chicago on the 18th. He was engaged in truck gardening, and during the time that Crowell worked for him he and Crowell loaded up a wagon with produce one night and drove into Chicago, arriving·

there early in the morning. He testified on cross-examination, "I am not sure that we didn't load up Sunday night." If, as a matter of fact, they did come to town Sunday night or early Monday morning, that would be the 18th of July, when the respondent claims that Crowell was in his office and was paid. On the other hand, Florence Shanahan, Andrew Foster and the respondent all testified to the payment, and there is a receipt of Crowell, signed by his mark, it is true, but witnessed by Mrs. Shanahan, who was then Miss Eckert. The story told by the witnesses for the respondent is entirely reasonable and they were in no way discredited, although they had previously testified to the same facts in the municipal court in the suit of Crowell against the respondent, where the receipt had been offered in evidence, and counsel for the relator knew what the testimony would be and had full opportunity to ascertain the character of the witnesses and the facts. This cannot be said of the testimony of Crowell. While the latter, because of his ignorance, belongs to a class that deserves the protection of the court, his interests are not involved in this proceeding and it is dangerous to rely on the evidence of such a witness. He had been employed by one Waite about a year and a half, had been irregularly paid, and did not know, and could not tell the respondent when he engaged his services, how long he had worked, or for what wages, or how much he had been paid or what was owing to him. He testified positively that he did not assign the note he had received from Waite or his claim against Waite for wages, as respondent claims he did, and it is absolutely certain that he did assign the note and claim, and the assignments were in writing and were shown by the evidence. The respondent sued on the note in his own name as assignee and recovered a judgment, from which there was an appeal to the Appellate Court, and the case appears in the reports under the title of *"Moseley, Defendant in Error, v. Waite, Plaintiff in Error,"* 180 Ill. App. 408.

Under the respondent's theory of the case, when he paid
Crowell the $354.10 in cash which he had collected, that
was substantially seventy-five per cent of the note and open
account for wages. He still owed Crowell about $60 to
make up the seventy-five per cent of the note and the claim
which he had agreed to pay. There is nothing singular
about the circumstance of paying Crowell in cash instead of
by check. There can be no question, from the evidence,
that Foster brought to the respondent's office over $600
cash while Crowell was there, and the respondent evidently
thought it would be just as well to pay Crowell in money
rather than give him a check and go with him and identify
him and see that it was paid. Of course, Crowell testified
that he did not receive the money. The plaintiff in nearly
every case does that. He evidently had in his mind that
there was something coming to him in the transaction, and,
in fact, the amounts paid him by respondent in cash and
in checks lacked a few dollars of making seventy-five per
cent of the claims he had assigned. There is nothing ex-
cept his own statement to show that he made any effort
to get anything further from the respondent until nearly
four years had elapsed, when he consulted an attorney, who
brought suit in the municipal court.

This is a judicial proceeding, and if the charges against
the respondent are sustained it should be upon evidence that
is both competent and sufficient. The power to disbar at-
torneys is not arbitrary or despotic or to be exercised ac-
cording to the pleasure of the court, but is judicial. (*In re
Day,* 181 Ill. 73.) It should be exercised with sound and
just discretion, according to the same rules of law which
govern in the determination of other civil rights which are
brought before the court for disposition. (*People* v. *Amos,*
246 Ill. 299.) The truth of the charges in an information
to disbar an attorney must be established by clear and satis-
factory evidence and cannot rest in doubtful and uncertain
incidents. The burden of proof is upon the relator and

the presumption of innocence is in favor of the respondent. Where a criminal offense is charged, the commission of such crime must be proven beyond a reasonable doubt. (*People* v. *Sullivan,* 218 Ill. 419; *People* v. *Silha,* 252 id. 385; *People* v. *Matthews,* 217 id. 94; *People* v. *Harvey,* 41 id. 277; *People* v. *Barker,* 56 id. 299.) If the charges in the information are true the respondent is guilty of embezzlement, forgery and perjury, and he is openly charged with these crimes in the brief of counsel for the relator. While attorneys have always been held to a high standard of honesty, when they are charged with offenses like those in the information in this case, involving, as they do, their professional career and those things that are as dear as life itself, such charges should not be sustained except by sufficient proof. It establishes a dangerous precedent to depart from the rules heretofore enforced in such cases and to hold that an attorney should be disbarred for withholding money from another when the fact of such withholding rests on such unsatisfactory and contradictory evidence and where the payment of such money is clearly established by the evidence of two witnesses apparently truthful and disinterested and by the testimony of the respondent. Under such circumstances no court would find respondent guilty in a criminal suit, in which it would be necessary to prove the unlawful conversion of the money, or even in a civil suit to recover the money so alleged to be withheld. Respondent did all that he could do when he took the receipt of the claimant and the receipt was witnessed. Such receipt is *prima facie* proof and ordinarily a sufficient proof of payment. On the holding of the majority opinion in this case an attorney, in paying over money, must always be in a position to prove such payment beyond the possibility of a doubt. I think the rule should be discharged.

CARTER and DUNCAN, JJ.: We concur in the foregoing dissenting opinion.